Jeff D. Friedman (*Pro Hac Vice*)
Shana E. Scarlett (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Thomas R. Karrenberg (#3726)
Heather M. Sneddon (#9520)
ANDERSON & KARRENBERG
50 West Broadway, Suite 700
Salt Lake City, Utah  84101
Telephone:  (801) 534-1700
Facsimile:  (801) 364-7697
tkarrenberg@aklawfirm.com
hsneddon@aklawfirm.com

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KYLE SAWYER, Individually and on Behalf of all Others Similarly Situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>BILL ME LATER, INC., EBAY INC., and PAYPAL, INC.,<br><br>                    Defendants. | Case No. 2:11-cv-00988<br><br><u>CLASS ACTION</u><br><br>FIRST AMENDED COMPLAINT<br><br>DEMAND FOR JURY TRIAL<br><br>**FILED UNDER SEAL PURSUANT TO A PROTECTIVE ORDER**<br><br>(REDACTED VERSION)<br><br>Judge Clark Waddoups |

# TABLE OF CONTENTS

**Page(s)**

I.    NATURE OF ACTION ................................................................................1

II.    PARTIES ................................................................................................4

III.    CLASS ALLEGATIONS ................................................................................7

IV.    JURISDICTION AND VENUE ................................................................9

V.    UNLAWFUL and unfair PRACTICES BY BILL ME LATER .......................................9

    A.    Plaintiff Sawyer's Bill Me Later Transaction ........................................9

    B.    Bill Me Later's Transactional Credit Model........................................11

    C.    Bill Me Later's Rent-A-Charter Agreement with CIT Bank .................13

    D.    Bill Me Later's Status as Lender-in-Fact.............................................17

    E.    Changes to the Bill Me Later Program .................................................21

    F.    The Search for a New Charter to Rent...................................................22

    G.    Bill Me Later's Failed Effort to "Create Risk" for WebBank ..............24

    H.    Bill Me Later's Agreements with WebBank ........................................25

    I.    Bill Me Later's Conduct Violates California Law and Harms Consumers ..........27

VI.    CAUSES OF ACTION ................................................................................32

VII.    PRAYER FOR RELIEF ................................................................................38

VIII.    DEMAND FOR JURY TRIAL ................................................................39

Plaintiff, Kyle Sawyer, brings this class action suit against Bill Me Later, Inc. ("Bill Me Later"), eBay Inc. ("eBay") and PayPal, Inc. ("PayPal") on behalf of himself and all other similarly situated California residents. The following allegations are based on information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## I.      NATURE OF ACTION

1.      Defendants Bill Me Later, eBay, and PayPal structured a scheme to be the lenders-in-fact to California consumers and receive the lion's share of the money (interest and fees) paid by these California consumers. To capture the bulk of the revenue from consumer loans, Defendants undertake all of the risk associated with providing credit to California consumers. But there is a catch. Defendants do not want to comply with the various state consumer protection laws – including California's – that apply to consumer lending.

2.      To avoid state law, Defendants engage in a financial shell-game – which in truth is just a form of money laundering. For a small fee paid to a willing bank, Defendants "rent" the willing bank's charter, hoping to cloak themselves under the preemption language in the Federal Deposit Insurance Act that expressly applies only to banks. By doing so, Defendants – none of which are banks or bank affiliates – seek to evade having to comply with state consumer-protection laws.

3.      If Defendants' scheme is permitted, one can easily envision the results: to evade consumer protections in the lending context, more and more entities and individuals simply would pay a fee to a bank to "rent a charter" in order to engage in banking lending activities free from state regulation.

4.      Defendants make the Bill Me Later payment solution available on websites. Currently, Defendants offer Bill Me Later through more than 1,000 online stores, catalogs and travel partners, including during the relevant period, Borders, Blue Nile, Bluefly, Continental

- 1 -

Airlines, eLUXURY, Fujitsu, JetBlue, Overstock, QVC, Toshiba, Toys "R" Us, U.S. Airways,
Walmart.com and Zappos.

5.      As described by eBay when it decided to acquire Bill Me Later, Bill Me Later has
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████ In other
words, Bill Me Later's business model is structured to evade consumer protection laws by
passing its loan accounts through a chartered bank, while keeping almost all the rewards – and
risks – for itself.

6.      Critical to Bill Me Later's business model is what it describes as a "rent-a-
charter" agreement with a chartered bank, using the bank's name on paper, while undertaking all
risks and receiving most of the revenue from the actual loans.  Through August 31, 2010,
Defendants rented CIT Bank's charter.  Beginning September 1, 2010, Bill Me Later rented
WebBank's charter.

7.      The sole purpose of Defendants' rent-a-bank arrangement is to avoid state
regulation, including California's laws regarding providing credit and lenders in particular.  As
Bill Me Later noted in 2009, ████████████████████████████████████████
████████████████████████████████████████████ It further
acknowledged that ██████████████████████████████████ for that
purpose.

8.      Even under the rent-a-charter arrangement, however, Bill Me Later remains the
lender-in-fact on all transactions.  While the Bank establishes an "account" after the loan is
originated, ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████

9.      Pursuant to its agreement with the bank, ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

10.     The arrangement with the bank is thus nothing but a closed-end loop, the sole

purpose of which is to try to cloak Bill Me Later's role as the lender-in-fact, allowing it to

operate without a banking license in all fifty states, without complying with the laws and

regulations applicable to an unchartered bank.

11.     California's laws, however, cannot be avoided by playing shell games.  Because it

is the real party-in-interest, Bill Me Later is required to have a license in California and comply

with the provisions of the Financial Lenders Law and with generally applicable consumer

protection laws, and is prohibited from charging contractual penalties and usurious interest rates.

Bill Me Later has devised a scheme with the purpose and intent to avoid these California

consumer protection laws, thereby causing injury to consumers and competitors through its

unfair practices and illegal charges.

12.     Bill Me Later must comply with California law and is not doing so on a

continuing basis.  Accordingly, Plaintiff and the classes bring this suit to enjoin Defendants from

future illegal conduct that is harmful to consumers and to Defendants' competitors and to recover

funds for consumers who were charged illegal and unfairly high interest rates and unlawful late

fees.  This action arises under California Civil Code section 1671, California's Consumers Legal

Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, California Constitution Article XV § 1 and

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

## II.   PARTIES

13.     Plaintiff Kyle Sawyer resides in Solano County, California, and has used the Bill Me Later service and was charged and has paid unlawful interest rates and penalty fees.

14.     Defendant Bill Me Later is a subsidiary of Defendant PayPal.  Bill Me Later is headquartered in Timonium, Maryland, with additional offices in Hunt Valley, Maryland and San Francisco, California.  As registered on the California Secretary of State's website, Bill Me Later's address is 2145 Hamilton Avenue, San Jose, California, 95125.  Bill Me Later's Agent for Service of Process in California is National Registered Agents, Inc., 2875 Michelle Drive, Suite 100, Irvine, California, 92606.

15.     Defendant eBay is the parent company of PayPal.  The address of eBay's headquarters is 2145 Hamilton Avenue, San Jose, California, 95125.  EBay's Agent for Service of Process in California is National Registered Agents, Inc., 2875 Michelle Drive, Suite 100, Irvine California, 92606.  In 2008, eBay paid $945 million to acquire Bill Me Later.[1]  In its Form 10-Q, filed with the Securities and Exchange Commission ("SEC"), dated April 28, 2009, eBay stated: "Bill Me Later . . . purchases the receivable related to the consumer loan extended by CIT Bank"[2] and "[w]e currently fund the purchase of receivables related to Bill Me Later accounts through free cash flow generated from our portfolio of businesses and from our existing line of credit."[3]  Thus, eBay aids and abets Bill Me Later's violations of California law described herein because it actively manages and enables the funding and purchasing of the consumer loans at issue.

16.     Defendant PayPal is a wholly owned subsidiary of eBay.  The address of PayPal's headquarters is 2145 Hamilton Avenue, San Jose, California, 95125.  PayPal's Agent for Service

---

[1]     Scott Moritz, *EBay to Lend Buyers a Hand*, CNNMoney.com (Oct. 6, 2008), http://money.cnn.com/2008/10/06/technology/ebay-bill-me.fortune/index.htm (last visited Jan. 31, 2012).

[2]     eBay Quarterly Report (Form 10-Q), at 40 (Apr. 28, 2009).

[3]     *Id.*

of Process in California is National Registered Agents, Inc., 2875 Michelle Drive, Suite 100,

Irvine, California, 92606.

17.     Upon its acquisition of Bill Me Later, eBay publicly stated its intent to combine

Bill Me Later with PayPal, another of eBay's payment subsidiaries.  Bill Me Later was to

become a business unit which was a part of eBay's PayPal subsidiary.  EBay announced that the

president of PayPal, Scott Thompson, would "oversee" both PayPal and Bill Me Later.  Gary

Marino, the chief executive officer ("CEO") of Bill Me Later, "will report to Thompson [the

president of PayPal] as part of the PayPal senior executive team."[4]  EBay repeatedly stated its

plans to merge the PayPal and Bill Me Later systems.[5]

18.     On information and belief, since being acquired, PayPal has integrated the Bill

Me Later systems and functionality into PayPal.  In eBay's Form 10-K, filed with the SEC, eBay

stated:

> We continue to invest in product development designed to
> capitalize on synergies between Bill Me Later and other eBay
> brands.  In 2009, we introduced Bill Me Later as a funding source
> within a PayPal account for certain U.S. customers and we also
> began to offer Bill Me Later as a payment method on eBay.com in
> the U.S.  In 2010, we intend to further expand these offerings.  In
> addition, we have **combined our PayPal and Bill Me Later
> merchant sales teams** and have begun selling both the PayPal and
> Bill Me Later solutions in a coordinated effort to offer merchants
> greater efficiency in product integration.[6]

---

[4]     *See* eBay Press Release, *EBay Inc. Extends Leadership In Online Payments*, Ebay.com
(Oct. 6, 2008), http://investor.ebay.com/releasedetail.cfm?releaseid=338502 (last visited on
Jan. 31, 2012).

[5]     *See, e.g.*, Daniel Wolfe, *EBay Set To Merge Paypal and Bill Me Later Systems*, American
Banker.com (Mar. 13, 2009), http://www.americanbanker.com/issues/174_52/-374571-1.html
(last visited Jan. 31, 2012).

[6]     eBay Annual Report (Form 10-K), at 11 (Feb. 17, 2010). All emphasis added unless
otherwise noted.

010133-12 498336 V6

19.     Gary Marino, the former CEO of Bill Me Later, is now the Senior Vice President of global financial services for PayPal.[7]  In this role, he leads PayPal's credit business including its flagship Bill Me Later transactional credit service, as well as PayPal's global portfolio of credit products offered in conjunction with its banking partners.  He also oversees the teams responsible for PayPal's relationship with banks and financial associations, as well as risk management and the security of the PayPal system.

20.     When posed the question, "Are Bill Me Later and PayPal the same company?" PayPal has publicly and evasively responded:  "PayPal acquired Bill Me Later in November 2008.  Both Bill Me Later and PayPal are committed to providing customers with the fastest, most convenient online buying experience."[8]

21.     Plaintiff and the class allege on information and belief that all of the acts and omissions described in this Complaint by Bill Me Later were duly performed by, and attributable to Defendant eBay, each acting as agent and/or under the direction and control of the others, and such acts and omissions were within the scope of such agency, direction and/or control.  The acts of Bill Me Later were authorized and/or ratified by eBay, and together constitute a single and continuing course of conduct.

22.     Plaintiff is informed and believes, and thereon alleges, that each of the Defendants named herein acted as the agent, employee, representative partner, joint venture, or co-conspirator of each of the other Defendants named herein in the commission of the acts and omissions alleged herein, and acted within the course and scope of its duty as such agent, employee, representative, partner, joint venture or co-conspirator.  The acts of each such

---

[7]     *See* PayPal Leadership, Paypal.com, https://www.paypal-media.com/management.cfm (last visited Jan. 31, 2012).

[8]     *See* PayPal Frequently Asked Questions, PayPal.com, https://personal.paypal.com/cgi-bin/marketingweb?cmd=_render-content&content_ID=marketing_us/BillMeLater_ProductOverview (last visited Jan. 31, 2012).

Defendant were authorized and/or ratified by each other Defendant, and together constitute a single and continuing course of conduct.

### III.    CLASS ALLEGATIONS

23.    Plaintiff brings this action on behalf of himself and all other persons similarly situated pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and California Civil Code section 1781.  Plaintiff seeks to certify and represent the following classes:

a.    *California Damages/Restitution Class*:  All California residents who received a loan using the services offered by Bill Me Later and were charged and paid interest within the greatest time period allowed by the applicable statutes of limitation as triggered by the original filing of this action on January 4, 2010, in the Northern District of California, Case No. CV 10-0014 JSW, up to and including the date judgment is entered in this action;

b.    *California Damages/Restitution Subclass*:  All California residents who received a loan using the services offered by Bill Me Later and were charged and paid interest and were also charged and paid a late fee within the greatest time period allowed by the applicable statutes of limitation as triggered by the original filing of this action on January 4, 2010, in the Northern District of California, Case No. CV 10-0014 JSW, up to and including the date judgment is entered in this action;

c.    *California Transactional Lending Subclass:* All California residents who received a loan using the services offered by Bill Me Later and were charged and paid interest or were charged and paid a late fee within the greatest time period allowed by the applicable statutes of limitation as triggered by the original filing of this action on January 4, 2010, in the Northern District of California, Case No. CV 10-0014 JSW, but before July 1, 2010; and

d.    *Injunctive Relief Class*:  All California residents who are current customers of Bill Me Later.

24.     Plaintiff alleges, on information and belief, that the classes are composed of thousands of people who have been charged and paid illegal interest and penalties in excess of five million dollars ($5,000,000).  The members of the classes are so numerous and geographically dispersed throughout the State of California that joinder of all class members in this action is impracticable.

25.     The identities and addresses of the individual members of the classes are ascertainable through Bill Me Later's billing records.

26.     Plaintiff's claims are typical of the claims of the members of the classes because Plaintiff and all members of the classes were damaged by the same wrongful conduct, namely the imposition of improper interest and illegal penalty fees.  Additionally, in the absence of injunctive relief, Defendants' practices are generally applicable to all class members.

27.     Plaintiff will fairly and adequately represent and protect the interests of the classes.  Plaintiff's interests are coincident with and not antagonistic to those of the classes.  In addition, Plaintiff is represented by counsel experienced and competent in the prosecution of complex class actions on behalf of consumers.

28.     There are numerous common questions of law and fact that predominate over any issues affecting individual class members.  Among the questions of law and fact common to the classes are:

a.     Whether Bill Me Later is subject to the generally applicable California consumer protection laws;

b.     Whether Bill Me Later has violated California's Financial Code;

c.     Whether Bill Me Later charges unlawful and unenforceable usurious interest rates in violation of the California Constitution;

d.     Whether Bill Me Later charges unlawful and unenforceable contractual penalties in violation of California law;

- 8 -

    e.      Whether Bill Me Later should be enjoined from imposing and collecting unlawful usurious interest payments and contractual penalties from California consumers; and

    f.      Whether eBay and PayPal have unlawfully participated in the illegal actions, including by aiding and abetting Bill Me Later's violations of California law.

29.     Defendants have acted and continue to act in a manner generally applicable to class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Injunctive Relief Class as a whole.

30.     Class treatment will benefit the class members, the parties, and the courts and is superior to the alternatives, if any exist, for the fair and efficient adjudication of this controversy. Individual California consumers are unlikely to obtain relief in the absence of class treatment.

31.     Plaintiff knows of no unusual difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## IV.    JURISDICTION AND VENUE

32.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1332(d) *et seq.* (the Class Action Fairness Act).

33.     Venue has been established in this Court by virtue of an order of the District Court for the Central District of California finding that a choice of venue provision should be enforced. Plaintiff reserves his right to challenge this order on appeal.

## V.    UNLAWFUL AND UNFAIR PRACTICES BY BILL ME LATER

### A.    Plaintiff Sawyer's Bill Me Later Transaction

34.     Mr. Sawyer used the Bill Me Later service when he purchased a computer online in October 2008 from Cyberpower Inc.

35.     During the checkout process, Mr. Sawyer clicked on the "Bill Me Later" icon. He then provided certain information, allowing Bill Me Later to run a credit check on him to determine whether to qualify him for a loan in the amount of the purchase.

010133-12 498336 V6

36.     When Mr. Sawyer was approved, Bill Me Later provided the Terms and
Conditions governing the issuance of the loan.  Those Terms and Conditions did not fully or
accurately disclose the nature of the relationship between Bill Me Later and CIT Bank.  They
also did not fully and adequately disclose the fees and interest that might be charged.

37.     The loan issued to Mr. Sawyer was solely for the purchase of the computer.  Bill
Me Later did not provide a general credit line that could be used with other merchants.  Instead,
it agreed only to pay the merchant the full price of the computer on Mr. Sawyer's behalf.

38.     Mr. Sawyer's loan for the purchase of the computer was in the amount of
$1,068.08.  Plaintiff's initial stated annual percentage rate was 19.99%.  On subsequent monthly
bills, Bill Me Later imposed more than one $39 late penalty fee, which is far in excess of the
actual damages Plaintiff caused Bill Me Later by his late payment.

39.     Mr. Sawyer's interactions with regard to the loan were all conducted solely with
Bill Me Later, and not with CIT Bank or any other bank.

40.     The Terms and Conditions presented by Bill Me Later to Mr. Sawyer at the time
of his October 2008 purchase did not include a choice-of-venue provision.

41.     Mr. Sawyer did not voluntarily use the Bill Me Later system or attempt to access
his Bill Me Later account or otherwise interact with Bill Me Later again.

42.     On February 22, 2010 – approximately fifteen months after Mr. Sawyer's
transaction and a month after this lawsuit was originally filed – the Terms and Conditions for the
Bill Me Later program were modified.  One of the modifications included the addition of a
forum-selection clause, specifying that disputes would be resolved by a court in Utah.[9]

43.     On or around April 21, 2010, Mr. Sawyer had an online transaction with Turbine,
Inc., and attempted to use his PayPal account to make payment on that transaction.

_____

[9]     Declaration of Debra Roth in Support of Defendants' Motion to Dismiss for Improper
Venue or in the Alternative to Transfer Venue, ¶¶ 5-6 (C.D. Cal. ECF No. 10-1, June 24, 2010).

- 10 -

44.     Without Mr. Sawyer's consent or knowledge, it appears that PayPal unilaterally converted that transaction to be paid from his preexisting Bill Me Later account.  Around or about that time, he received an e-mail from "service@paypal.com" stating that he had "sent a payment of $6.50 USD to Turbine Inc."  The e-mail further stated: "You'll be billed with Bill Me Later through your PayPal account."   At no time did PayPal request or receive Mr. Sawyer's consent or approval to use his old Bill Me Later account for this transaction.

45.     While Mr. Sawyer is unaware of why PayPal made this decision, his financial information had been stolen in March 2010, leading him to change his financial information, including some information that may have been necessary for use of his PayPal account.

46.     PayPal did not alert Mr. Sawyer to the need to provide updated information in order to complete the PayPal transaction, and upon information and belief, PayPal may have simply decided of its own accord to use Mr. Sawyer's Bill Me Later account; again, without the knowledge or consent of Mr. Sawyer.

**B.     Bill Me Later's Transactional Credit Model**

47.     At the time Mr. Sawyer made his purchase, Bill Me Later operated an instant, transactional credit plan that consumers used at the point-of-sale to check out and make online purchases of particular goods and services.  In contrast to credit cards which provide for a revolving line of credit, transactional credit is only authorized on an item-by-item basis when goods or services are being purchased.  Therefore, each instance when a consumer applied for transactional credit depended on a near real-time instantaneous credit decision by Bill Me Later that, if approved, was a transaction specifically intended and authorized to result (and indeed did result) in the sale of specific goods or services.

48.     Bill Me Later described its product at that time as ████████████████████ ███████████████████████████████████████████████  Unlike a regular credit card or general extension of credit, ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████

49.     This system was highly advantageous to Bill Me Later.  As it commented, the

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

50.     The transactional model brought other advantages to Bill Me Later, because it

██████████████████████████████████████████████████

██████████████████████████████████████████

than other types of credit.  For example, this model ███████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████

51.     For each decision in this model, the amount of the specific purchase at issue was a

key component of the decision of whether or not to extend credit to the customer.  One of the

main requirements for an account was a █████████████████████████████

██████████████████████████████████████████████████

████████████

- 12 -

52.     The customer's experience, however, belied the complexity of Bill Me Later's model and the amount of information being gathered.  Bill Me Later's underwriting process was ███████████████████████████████████ and typically took place in seconds. ██████████████████████████████████████████ ████████████████████████████████████████████ ████████████

53.     The self-described ████████████████████ thus was intentionally developed to be different from traditional credit cards and loans in ways that would benefit Bill Me Later, allowing it to have more information and more control over every credit purchase made by a consumer.  In fact, one of the selling points for Bill Me Later, when it was acquired by PayPal, was that its model was ████████████████████████████████████ ██████████████████████████████

54.     These differences were all the more significant given that Bill Me Later's executive team came with deep roots in the credit card lending industry.  The former CEO of Bill Me Later, Gary Marino, had an extensive background in the lending industry before founding Bill Me Later, which made a huge investment in its proprietary lending model.  Mr. Marino spent fifteen years at Citibank, rising to chief credit officer, and then left in 1996 to run the credit and marketing operations at First USA, which was purchased by Bank One the next year.  By 2000, Mr. Marino had helped boost its receivables to $70 billion.  Mr. Marino left that year to start Bill Me Later and secured $100 million in venture capital to develop Bill Me Later's complex and proprietary lending model.

C.      **Bill Me Later's Rent-A-Charter Agreement with CIT Bank**

55.     As Bill Me Later knew and repeatedly remarked in internal documents, ████ ████████████████████████████████████████████████ ██████████ But, ███████████████████████████████████

Thus, Bill Me Later knew that as an unlicensed firm, it could not legally offer its product in any state, including California.

56.    Bill Me Later also did not want to become licensed and comply with state laws. As it described, ████████████████████████████████████████████████████████ ████████████████████████ Avoiding that need was a ████████████ for its operating model.

57.    Bill Me Later's solution was to ████████████████████████████████████ ████████████████████████████████████ taking advantage of the fact that chartered banks are allowed to "export" the home state's interest rates. According to Bill Me Later, ██████ ████████████████████████████████████████████████ and thereby being subject to federal regulations, but also to ████████████████████████████████ applicable to lenders who are not chartered.

58.    The arrangement between Bill Me Later and CIT Bank was a simple pass-through. Pursuant to the ████████████████ between them, CIT Bank agreed to ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████

59.    ████████████████████████████████████████████ ████████████████████████ Under a separate ████████████████████ ████████████████████████████████ CIT Bank retained an ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████

- 14 -

60.     Bill Me Later's Terms and Conditions also informed customers that the consumer accounts were "operated and serviced by Bill Me Later" and that "Bill Me Later Inc. will become the company to which you will owe the amounts due on your account."[10]

61.     Under this arrangement, Bill Me Later also conducted all aspects of the transaction, including running the credit check and deciding whether to extend credit to the applicant. This was confirmed in multiple public statements at that time. For example, in the Frequently Asked Questions section of its website at that time, Bill Me Later acknowledged that it was the entity that reviewed the credit of consumer applicants: stating, "Bill Me Later will review your credit report prior to opening your account. . . . Bill Me Later does not review your credit report for each transaction. However, your credit report may be reviewed periodically to provide you with the maximum buying power possible." It further emphasized, "We do re-evaluate this regularly."[11]

62.     Even CIT Bank recognized at that time that "Bill Me Later does a quick credit review, processed behind the scenes."[12]

63.     Bill Me Later also made the decision whether to adjust its loan portfolio based on the results of the credit analysis it conducted. During eBay's quarterly earnings conference call on April 22, 2009, eBay's Chief Financial Officer and Senior Vice President of Finance, Robert H. Swan ("CFO"), stated:

> On the first one on Bill Me Later, the primary decline is in the loan portfolio balance at the end of the period so that the full 90 days is not really a driver. But the decline in the loan portfolio or the balance at the end of the period is primarily driven by two things.

---

[10]    Bill Me Later, Terms and Conditions of the Bill Me Later Payment System (2009), https://www.secure checkout.billmelater.com/paycapture-content/fetch?hash=PD4106KD& content=bmlweb/bmlwebtnc.html (last visited May 18, 2010).

[11]    Bill Me Later Frequently Asked Questions (2009), https://www.billmelater.com/help/index.xhtml.

[12]    CIT Group, Products and Services: bill-me-later, *CIT Bank Helps Make Shopping on the Internet Easy, Quick and Secure with "Bill Me Later"* (2009), http://www.cit.com/products-and-services/cit-bank/bill-me-later/index.htm (last visited May 18, 2010).

One is just seasonality. Fourth quarter is a higher quarter for Bill Me Later and then those consumers pay off their balances in a relatively timely manner so Q4 to Q1 seasonality with Bill Me Later is all else equal, going to be coming down. And *secondly and probably more importantly is our credit decision you mentioned in that our collective desire and the team's ability with their decision you mentioned to in tough economic times and tough credit environments with high unemployment, they have the ability in their model to be tighter in their decisioning and we did that during the course of the quarter and as a result we took on lower balances consciously as we tried to manage the dynamics between both growth and risk management.*[13]

64.    Similarly, during a quarterly earnings conference call that took place on July 22, 2009, eBay's CFO again demonstrated that Bill Me Later is the entity to decide whether to make the loans to consumers:

Let me touch on a few key operating metrics from Bill Me Later. Bill Me Later's gross receivable balance at quarter end was $553 million. *We continue to be cautious in our credit approval process in order to manage the quality of new receivables we under-write,* which we believe is the right trade-off in the current environment.[14]

65.    And in its Form 10-Q dated April 28, 2009, eBay further stated:

The Bill Me Later service is offered to a wide range of consumers, and the profitability of this business *depends on our ability to manage credit risk* while attracting new consumers with profitable usage patterns. *Bill Me Later approves loans using proprietary segmentation and credit scoring algorithms and other analytical techniques designed to analyze the credit risk of the specific transaction.* These algorithms and techniques may not accurately predict the creditworthiness of a consumer due to, among other factors, inaccurate assumptions about a particular consumer or the economic environment. Bill Me Later may also incorrectly interpret the data produced by these algorithms *in setting its credit policies.*[15]

---

[13]    *eBay Q1 2009 Earnings Call Transcript*, Seeking Alpha.com (Apr. 22, 2009), http://seekingalpha.com/article/132454-ebay-inc-q1-2009-earnings-call-transcript?part=qanda (last visited Feb. 1, 2012).

[14]    *eBay Q2 2009 Earnings Call Transcript*, Seeking Alpha.com (Jul. 22, 2009), http://seekingalpha.com/article/150628-ebay-q2-2009-earnings-call-transcript (last visited Feb. 1, 2012).

[15]    eBay Quarterly Report (Form 10-Q), at 40-41 (Apr. 28, 2009).

- 16 -

**D.      Bill Me Later's Status as Lender-in-Fact**

66.      As these facts show, the arrangement with CIT Bank was a pure pass-through with no substance, leaving Bill Me Later as the lender-in-fact.  Bill Me Later conducted all interactions with the consumer, including determining whether or not to extend the credit, and within days of the account being authorized, Bill Me Later owned all substantive aspects of the account, including all rights to any profits generated and all risks from any losses sustained.

67.      Internal depictions of this program show the entirely circular nature of the relationship with CIT Bank:



68.      This circular scheme is similar to that used by some unlawful payday lenders, which are also known as "rent-a-charter" or "rent-a-bank" schemes, whereby:

> [P]ayday lenders make their loans through the nominal auspices of out-of-state banks, which are exempted from state usury laws.  In a typical charter-renting scheme, the payday lender markets the loans, accepts applications, interacts with customers, and retains the predominant economic interest in the transaction. . . .  While the scheme rests on the payday lender's claim to be acting as a mere 'agent' for the out-of-state bank, the payday lender is the de facto lender.  The bank's economic interest in the loan is generally

limited to the fee it receives from the payday lender for the use of its charter.  Rent-a-charter has been widely criticized by state and federal regulators.[16]

69.     Further demonstrating that Bill Me Later is the true party-in-interest, Bill Me Later repeatedly represented itself as the lender and owner of the loan in collection actions across the country.  Bill Me Later represented in affidavits that individual Debtors "agreed to pay the Debtor's Account in full by contract with" Bill Me Later and that Debtor had "agree[ed] to the terms and conditions set forth by" Bill Me Later.  It alleged in a complaint it filed against a customer for breach of contract that the customer "entered into a contract with Plaintiff [Bill Me Later] for goods sold and delivered and/or services rendered."  In another case, it averred that the **"Plaintiff, Bill Me Later, Inc. made a loan to the Defendant by paying the merchant on behalf of the Defendant."**

70.     In yet another affidavit, Bill Me Later's employee stated that "Bill Me Later issues credit to customers in all states."  He further testified that "Customers apply to Bill Me Later for credit via the internet," that the "procedures for issuing credit, agreements, recording agreements, and recording transactions are carried out in the usual course of business *by Bill Me Later's employees*," and that "accounts are issued with the 'Terms and Conditions of the Bill Me Later Payment System."  Bill Me Later thus repeatedly represented under oath that it controlled and owned all aspects of the loans generated in its program.

71.     These representations were also consistent with public statements to the effect that Bill Me Later made all relevant credit decisions and owned the relevant receivables.  For example, an article on CNNMoney.com explains that Bill Me Later "runs a credit check to gauge the credit-worthiness of the customer, then uses CIT (CIT, Fortune 500) bank to finance online consumer purchases.  *Then Bill Me Later buys the loan from CIT* and charges the customer

---

[16]  Ellen Harnick, *Georgia's Payday Loan Law:  A Model for Preventing Predatory Payday Lending*, Center for Responsible Lending (June 2006), http://www.responsiblelending.org/payday-lending/policy-legislation/states/pa-GeorgiaPayday-0606.pdf (last visited Feb. 1, 2012).

010133-12 498336 V6

20% interest on the balance of the loan."[17]  There is no economic substance to this relationship. It is a pure "round-trip" transaction, similar to money laundering.

72.     Likewise, in its Form 10-Q dated April 28, 2009, eBay acknowledged that:

> ***Bill Me Later is neither a chartered financial institution nor is it licensed to make loans in any state.***  Accordingly, Bill Me Later relies on CIT Bank to extend credit to Bill Me Later customers in order to offer the Bill Me Later service.  When a consumer makes a purchase using the Bill Me Later service, CIT Bank funds the consumer loan at the point of sale and advances funds to the merchant.  ***Bill Me Later then purchases the receivable related to the consumer loan extended by CIT Bank.  Although CIT Bank continues to own each customer account, Bill Me Later owns the related receivable and is responsible for all servicing functions related to the account.*** . . .  We currently fund the purchase of receivables related to Bill Me Later accounts through free cash flow generated from our portfolio of businesses and from our existing line of credit.[18]

Thus, Bill Me Later exerts ownership and control over these loans, for which it is the sole and immediate purchaser of the accounts receivable.  Stated differently, Defendants were the entities legally responsible for ensuring the consumer loan was funded.  This is demonstrated by, in part, the fact that Defendants structured a prearranged agreement with CIT Bank where Defendants made the loan-approval decisions and then were obligated to reimburse CIT Bank the entire amount CIT Bank briefly advanced to the merchants on behalf of Bill Me Later.

73.     And in its Form 10-Q, eBay further acknowledged that it carries all of the risks associated with these loans:

> As of March 31, 2009, Bill Me Later had an aggregate consumer loan portfolio of approximately $507.6 million.  Like other businesses with significant exposure to losses from consumer loans, the Bill Me Later service faces the risk that account holders will default on their payment obligations, resulting in accounts becoming uncollectible, and the risk of potential charge-offs related to the loan portfolio.[19]

---

[17]   Moritz, *supra* note 7.

[18]   eBay Quarterly Report (Form 10-Q), at 40 (Apr. 28, 2009).

[19]   *Id.* at 41.

Moreover, eBay's independently audited financial statements, like this one, recognized that these consumer loans were assets of Bill Me Later. Once again, there was no economic substance to this relationship, as Bill Me Later owned both the account liabilities and receivables – it was tantamount to laundering money but instead Bill Me Later was "loan laundering."

74.     These facts show that Bill Me Later was the real party-in-interest in these transactions because it: (1) was the sole entity to interface with the consumers and owned and controlled the branding of the loans which were available only through its credit software engine; (2) provided the online loan applications for consumers, accepted the online loan applications from consumers, reviewed the credit of consumer applicants, decided whether and under what terms to make the loans; and (3) was the entity to extend the credit to consumers, and serviced the accounts, accepted loan payments from consumers, took on the risk of consumers defaulting on their loans, claimed the consumer loans as assets in its independently audited financial statements, and set the late fees and interest rates about which the Plaintiff and the classes complain. CIT Bank was not the real party-in-interest, and instead Bill Me Later used CIT Bank's charter for purposes of circumventing California laws limiting late fees and interest rates. Indeed, eBay's close to one-billion-dollar ($1,000,000,000) purchase of Bill Me Later belies any notion that Bill Me Later was simply relegated to the role of a small loan servicing agent acting on behalf of CIT Bank.

75.     Courts have looked to the factors described above to determine the existence of a sham or illusory lending relationship. *See, e.g., Discover Bank v. Vaden*, 489 F.3d 594, 602-03 (4th Cir. 2007) (factors include whether the bank extended the credit and set the interest and fees, whether the bank takes on the risk, and whether independently audited financial statements identify the loans as assets of the bank), *rev'd on other grounds*, 556 U.S. 49 (2009); *Flowers v. EZPawn Okla., Inc.*, 307 F. Supp. 2d 1191, 1205 (N.D. Okla. 2003) (determining that the following allegations supported finding the bank ***was not*** the true lender: "Although the loan

- 20 -

proceeds are paid to borrowers by checks purportedly drawn from County Bank, EZCorp

through EZPawn exerts ownership and control over these loans. EZCorp through EZPawn

carries out all interaction with the borrowers, accepts the ultimate credit risk, collects and

pockets virtually all of the finance charges and fees, and owns and controls the branding of the

loans which are available only at its pawnshops.").

   76. Moreover, when looking at the practice of "rent-a-charters" in the context of the

payday-loan industry, the Office of the Comptroller of Currency, the agency that regulates

federal banks, has asserted that "the standard for finding complete preemption is not met" where

"the only defendant . . . is not a national bank."[20]

   77. Even eBay acknowledged this potential risk, describing in Form 10-Q that:

> Our Bill Me Later service is similarly subject to a variety of laws
> and regulations. Although Bill Me Later does not originate loans,
> ***one or more jurisdictions may conclude that Bill Me Later is a
> lender*** or money transmitter or loan broker, which could subject us
> to liability or regulation in one or more jurisdictions. Additionally,
> federal regulators could mandate changes to the relationship
> between Bill Me Later and CIT Bank, the financial institution that
> Bill Me Later relies on to extend credit to customers with the Bill
> Me Later service. Any adverse changes in this relationship could
> negatively impact Bill Me Later's ability to continue operating its
> business as currently conducted.[21]

**E. Changes to the Bill Me Later Program**

   78. In June 2010, CIT Bank informed Bill Me Later that 

---

[20] Pearl Chin, *Payday Loans: The Case for Federal Legislation*, 2004 U. Ill. L. Rev. 723, 734 (2004).

[21] eBay Quarterly Report (Form 10-Q), at 36 (Apr. 28, 2009).

010133-12 498336 V6

79.    As a result, Bill Me Later began establishing and communicating to customers that they had a credit line ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████

80.    ████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████

F.     **The Search for a New Charter to Rent**

81.    █████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

82.    █████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

83.    █████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████



84.

85.

86.

**G.     Bill Me Later's Failed Effort to "Create Risk" for WebBank**

87.     ███████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████

88.     ███████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████

89.     ████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████

90.     As clearly indicated by the PayPal employee stewarding the process in his report to another eBay employee, these discussions began because ████████████████████ ████████████████████████████████████████ But, ███████ ████████████████████████████████ To accommodate these conflicting desires, the parties discussed multiple ideas which were then taken ██████ ████████████████████████████████████████████ ████████████████

91.     ██████████████████████████████████████████ ████████████████████████████ As shown in a recent document, in 2011 ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████

**H.     Bill Me Later's Agreements with WebBank**

92.     As with Bill Me Later's attempt to create risk for the bank in order to secure a better litigation result, the agreements negotiated between WebBank and Bill Me Later in 2010 – while this lawsuit was pending – also attempted to add a patina of oversight and control in WebBank.  However, under that gloss, the substance of the agreements reveals the same pass-through arrangement in which Bill Me Later runs the program, reaps the rewards and owns the risk, thereby remaining the lender-in-fact.

93.     Once again, under a ████████████████ between the parties, WebBank agreed to make accounts available to applicants qualified by Bill Me Later and ████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

94.     ██████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

95.     ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

010133-12  498336 V6



96.

97.



98. ████████████████████████████████████

99.     There is perhaps no better evidence that Bill Me Later is the real party-in-interest than its own employee's statement after WebBank became the primary charter that ████████

████████████████████████████   As this observation correctly confirms, it is – and always was – Bill Me Later that stands to gain or lose on these accounts for any failure in the system, and not either of its bank partners.

**I.     Bill Me Later's Conduct Violates California Law and Harms Consumers**

100.     As the true lender and party in interest, Bill Me Later is not entitled to exemption from state laws because it is not a nationally chartered bank.  Therefore, its activities as a lender

are subject to California laws, including consumer protection laws, unfair competition laws and laws governing financial lenders.

101.    Bill Me Later is responsible for, exerts control over, and indeed sets the terms of the loans offered to consumers.  The terms of these loans violate the provisions of California Civil Code section 1671 because the excessive late fees set and charged by Bill Me Later bear no reasonable relationship to the range of actual damages incurred by Bill Me Later and are instead unlawful and unfair penalties:[22]

|                    | If the balance is:    | The late fee is: |
|--------------------|-----------------------|------------------|
| Fee for paying late | Under $5.00           | $0.00            |
|                    | $5.00 to $19.99       | $5.00            |
|                    | $20.00 to $149.99     | $19.00           |
|                    | $150.00 to $249.99    | $29.00           |
|                    | Over $249.99          | $39.00           |

102.    These fees also violate section 22320.5 of the California Finance Code, which limits applicable late fees.

103.    Bill Me Later is responsible for, exerts control over, and indeed sets the terms of the loans offered to consumers.  As detailed in a Wall Street Journal article:

> If you don't pay in full within 30 days, you'll face 19.9% interest on the amount owed.  Additionally, there are tiered fees, which vary depending on the total balance owed. . . .  Bill Me Later tends to draw consumers with higher credit profiles and that approximately 65% of the site's customers pay on time and in full. But 35% do not.[23]

---

[22]    Bill Me Later, Terms and Conditions of the Bill Me Later Payment System (2009), https://www.secure checkout.billmelater.com/paycapture-content/fetch?hash=PD4106KD&content=bmlweb/bmlwebtnc.html (last visited May 18, 2010).

[23]    Mary Pilon, *Bill Me Later Can Ding Your Credit Score Now*, WSJ Blogs: The Wallet (Dec. 9, 2008), http://blogs.wsj.com/wallet/2008/12/09/bill-me-later-can-ding-your-credit-score-now/ (last visited Feb. 1, 2012).

- 28 -

In fact, when the tiered late fees are included, the imputed annual percentage rate ("APR") can exceed 100 percent.

104.    For example, if one were to compute the late penalty fees assessed against Mr. Sawyer as an APR, Plaintiff has been charged more than a 70 percent annual interest rate during his monthly billing cycles.  Had Defendants fully informed Plaintiff that the interest rates and penalty fees violated state law, or if Defendants had fully disclosed their scheme to attempt to avoid state law, Plaintiff would not have used Bill Me Later's services.

105.    Plaintiff's experience is typical of Bill Me Later's illegal practices.  For example, one consumer complains:

> While ordering books online for $40.87, I was invited to open a BillMeLater account, which I did, wanting to know how it worked; I paid $20.07 for the first billing cycle.  I forgot the due date of the second billing cycle, since it's not part of my regular bills.  On a balance of $20.87, I was charged a late fee of $19.00, plus $2 finance charge.  On their website, my statement shows an **annual percentage rate of 115% !!!** I am charged a daily fee of $0.35.  I wanted to pay my total remaining balance, & immediately cancel my account.  Their system did not allow me to do that:  I had to do it on two different days; in the meantime, of course, they are charging more money.  This is pure usury; these companies should not be allowed to be in business; they should be sued, made to reimburse their exorbitant fees, terminated, and closed.[24] [Emphasis in original.]

106.    Another consumer complains:  "They are charging **annual percentage rate of 104.35%**[.]  Isn't this against the law?"[25]

107.    Another consumer posting states:  "I had problems with them also.  First of all no billing statements, then finally after four or five months you get one, with late fees and finance

---

[24]  *See* Anoukis, Comment on *Complaint Review: BillMeLater*, Ripoff Report.com http://www.ripoffreport.com/credit-debt-services/billmelater/billmelater-stay-away-from-bil-eq8f2.htm (last visited Feb. 1, 2012).

[25]  *See Bill Me Later - Don't Use Them!*, Complaints.com (Nov. 7, 2009), http://www.complaints.com/2007/november/9/BILL_ME_LATER_-_DON_T_USE_THEM__154171.htm (last visited Feb. 1, 2012).

charges out the wazoo.  Did you ever notice the *42.74% annual percentage rate*.  Is this legal?"[26]

108.    Another consumer posting states: "And *my interest rate is 64.83%!!!  My experience with bill me later was absolutely terrible.  It is a scam and a rip off*.  My $45 flower purchase became a practically $200 flower purchase and a huge headache."[27] (Emphasis added and in original.)

109.    Another consumer complains: "Late with a payment for a 46.00 balance and was charged additionally 19.00 plus 2.00 'finance charge.'  Made online account to pay 21.00 balance and they show I owe 31.00?  (46.20 check sent late has been cashed).  Get this: '*Annual percentage rate for this billing cycle: 51.95%.*'"[28]

110.    Another consumer complains:

> [I] used BML one time for a [C]hristmas purchase this year.  [I] thought it seemed interesting, so [I] wanted to try it.  [M]y purchase was under $30.  [T]hey sent me a bill online.  [I] could not figure out how to log in to the website to pay it, and [I] kept putting it off.  [I]t ended up being late because [I] forgot about it (my fault, [I] know).  [S]o, when [I] finally figured out how to log in to the site, they were *charging me 95% APR!* . . .  *Oh my god, are you kidding me*?  [S]o, [I] ended up having to pay over 45 bucks for the thing.  [I] couldn't believe it.  Obviously, it was my fault that the payment was late, *but* it should be *illegal* to charge someone that much in interest.[29]  [Emphasis added and in original.]

111.    Similarly, another Bill Me Later customer states:

> Then at the beginning of August I got a bill from them forwarded from our old address through the post office forwarding we set up.  The bill was dated July 7 with a due date of August 1.  I got this

---

[26]    *See* Carrots, Comment to *Bill Me Later . . . Late Fees, Finance Charges, Missing Bills*, ComplaintsBoard.com (Nov. 16, 2008), http://www.complaintsboard.com/complaints/bill-me-later-c124715/page/1.html (last visited Feb. 1, 2012).

[27]    *See, e.g., id.*

[28]    *See* Jean, Comment to *Quickie Reader Survey:  Have You Used "Bill Me Later?"*, Bloomberg Businessweek: The Tech Beat (Dec. 29, 2005), http://www.businessweek.com/the_thread/techbeat/archives/2005/12/quickie_reader.html (last visited Feb. 1, 2012).

[29]    *See* Ck, *id.*

010133-12 498336 V6

well after August 1. They never changed our address. It showed a balance of $13.00 for a $9.00 late fee and two $2.00 finance charges, with **this bill showing an APR of (I am not kidding or exaggerating here) 116.67%.** My husband had received a similar bill, after not receiving bills for something with over 76% APR.[30]

112.   A consumer posting also complains: *"**The APR on my December statement was 19.99%; it rose to 23.34% on my January statement, and this month it is a whopping 41.44%!**"*[31] (Emphasis added and in original.)

113.   Another consumer states:

Last November I purchased several books on Amazon with a gift certificate. The total was $15.63 over the amount of my gift cert. and I was offered a Bill Me Later option which I assumed was part of Amazon. I received the bill in the mail after the stated due date, so I paid the $15.63 I owed. Ever since I have been receiving bills from them with late fees and **annual percentage rates up to 180%.** The latest bill is $150.00. On what planet would someone pay that amount on a $15 bill?[32]

114.   Another consumer posting notes: "Here's the kicker . . . **they have two annual percentage rates depending on how your balance is calculated. One is 19.99% and the other is 102.70%!**"[33] (Emphasis added and in original.)

115.   And another customer of Bill Me Later complains: "There is a place on this statement in front of me that says their **annual percentage rate for this billing cycle is 104.39%.**

---

[30]   *See www.bill-me-later.com*, Complaints.com (Sept. 14, 2006), http://www.complaints.com/2006/september/14/www.bill-me-later.com_157.htm (last visited Feb. 1, 2012).

[31]   *See* Crow Meris, Comment to *Bill Me Later Might Mean Pay Up Much More Later*, Defendyourdollars.org (Feb. 17, 2009), http://defendyourdollars.org/posts/366-bill_me_later_might_mean_pay_up_much_more_later (last visited Feb. 1, 2012).

[32]   *See Bill Me Later Complaint: Bill Me Later SCAM According to Amazon – Online Credit*, My3cents.com, (Aug. 17, 2009), http://www.my3cents.com/showReview.cgi?id=60847 (last visited Feb. 1, 2012).

[33]   *See* Robert Doty, Comment to *Bill Me Later Complaints & Reviews – Bill Me Later System Sucks!*, ComplaintsBoard.com (Mar. 13, 2008), http://www.complaintsboard.com/complaints/bill-me-later-c2757.html (last visited Feb. 1, 2012).

No one, for anything, should charge an APR 104.39%. Further, adding on late fees in excess of the original debt is absurd."[34] (Emphasis added and in original.)

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

### (AGAINST BILL ME LATER)

116.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth in this paragraph.

117.   The contracts between Defendants and Plaintiff and the California Transactional Lending Subclass are consumer contracts, i.e., contracts for the "retail purchase, or rental, by such party of personal property or services, primarily for the party's personal, family, or household purposes." Cal. Civ. Code § 1671(c)(1).

118.   Accordingly, the clause by which Defendants collect their excessive late fees from Plaintiff and the California Transactional Lending Subclass are "void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." Cal. Civ. Code § 1671(d).

119.   The late fees Defendants include in their consumer contracts are void under California Civil Code section 1671, subdivision (d) because it is neither impracticable nor extremely difficult to ascertain the actual damage, if any, that Defendants sustain as the result of late payment of invoices by consumers; it is contained in a contract of adhesion; and the primary motivation for and effect of the charge is to earn additional profits for, and not to compensate, Defendants.

WHEREFORE, Plaintiff prays for judgment and relief as set forth below.

---

[34]   *See* Saundra of Evergreen, Comment to *Bill Me Later: Consumer Complaints & Reviews*, Consumeraffairs.com (June 17, 2009),
http://www.consumeraffairs.com/credit_cards/bill_me_later.html (last visited Feb. 1, 2012).

010133-12 498336 V6

**SECOND CAUSE OF ACTION FOR VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT**

**(AGAINST BILL ME LATER AND PAYPAL)**

120.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth in this paragraph.

121.    The above-described conduct of Defendants in their interactions with Plaintiff and with the California Transactional Lending Subclass violates the Consumers Legal Remedies Act, California Civil Code sections 1750, *et seq.*, by:

(a)    Passing off goods or services as those of another (Cal. Civ. Code § 1770(a)(1));

(b)    Misrepresenting the source, sponsorship, approval, or certification of goods or services (Cal. Civ. Code § 1770(a)(2));

(c)    Misrepresenting the affiliation, connection, or association with, or certification by, another (Cal. Civ. Code § 1770(a)(3));

(d)    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have (Cal. Civ. Code § 1770(a)(5));

(e)    Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another (Cal. Civ. Code § 1770(a)(7));

(f)    Advertising goods or services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

(g)    Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law (Cal. Civ. Code § 1770(a)(14)); and

010133-12  498336 V6

(h)    Inserting an unconscionable provision in the contract (Cal. Civ. Code § 1770(a)(19)).

122.    Pursuant to California Civil Code section 1780, subdivision (a), Plaintiff seeks an order enjoining Defendants from engaging in the methods, acts, or practices alleged herein.

123.    Pursuant to California Civil Code section 1782, Plaintiff provided notice to Defendants requesting the correction of the illegal acts.  Defendants failed to correct their illegal acts.  Therefore, pursuant to California Civil Code section 1782, Plaintiff seeks (a) actual damages; (b) restitution of money to Plaintiff and class members; (c) punitive damages; (d) attorneys' fees and costs; and (e) other relief that this Court deems proper.

WHEREFORE, Plaintiff prays for judgment and relief as set forth below.

### THIRD CAUSE OF ACTION IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTIONS 17200, *ET SEQ.*

### (AGAINST ALL DEFENDANTS)

124.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted against all Defendants.

125.    California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."  Defendants have engaged in unlawful and unfair business acts and practices in violation of section 17200.

126.    With regard to the California Transactional Lending Subclass, Bill Me Later has violated the unlawful prong of section 17200 because Defendants have violated Civil Code section 1671 by the acts and practices set forth in this Complaint.

127.    The late fees charged by Bill Me Later against the California Transactional Lending Subclass are in conjunction with consumer loans for the retail purchase, or rental, of personal property or services primarily for the personal, family, or household purposes within the meaning of Civil Code section 1671, subdivision (c)(1).

- 34 -

128.    The late fees charged by Bill Me Later against the California Transactional Lending Subclass are unlawful under Civil Code section 1671, subdivision (d) because they amount to penalties far in excess of and without reasonable relationship to the amount of damages sustained by Bill Me Later as a result of late payments.

129.    With regard to the California Transactional Lending Subclass, Bill Me Later and PayPal have violated California's Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*, by the acts and practices set forth in this Complaint.

130.    With regard to all classes, Bill Me Later has violated the unlawful prong of section 17200 because it has willfully violated California Financial Code section 22100(a) which states that no person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner.  Bill Me Later has failed to obtain a license from the California Department of Financial Institutions as required by the Financial Code.

131.    With regard to all classes, Bill Me Later has violated the unlawful prong of section 17200 because it has violated California Financial Code section 22324 which provides: "Any person who contracts for or negotiates in this state a loan to be made outside the state for the purpose of evading or avoiding the provisions of this division is subject to the provisions of this division." Bill Me Later has structured its relationship with CIT Bank to evade or avoid the provisions of California's Financial Code.

132.    With regard to all classes, Defendants Bill Me Later, PayPal and eBay have violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint offend established public policy, and because the harm they cause to consumers in California greatly outweighs any benefits associated with those practices.

133.    With regard to all classes, Bill Me Later has also violated the unfair prong of section 17200 because it has violated California Financial Code section 12304, which requires an annual report to the commissioner and the maintenance of records of its transactions so the

- 35 -

commissioner can determine whether the licensee is complying with the Finance Lenders Law and regulations promulgated by the commissioner.

134.    With regard to all classes, Bill Me Later has also violated the unfair prong of section 17200 because it has violated the policies of California Financial Code section 22001, which includes protecting borrowers against unfair practices by some lenders, having due regard for the interests of legitimate and scrupulous lenders.

135.    With regard to all classes, Bill Me Later has also violated the unfair prong of section 17200 because it has violated California Financial Code section 22109 by failing to satisfy the commission that no one who has more than a 10-percent interest in the lender has been convicted of a crime or committed an act of dishonesty or fraud related to consumer lending.

136.    With regard to all classes, Bill Me Later has also violated the unfair prong of section 17200 because it violated California Financial Code section 22320.5, which requires late fees not in excess of ten dollars for a period in default of not less than ten days; and late fees not in excess of fifteen dollars for a period in default of not less than fifteen days.

137.    With regard to all classes, Defendants have also violated the unfair prong of section 17200 because Defendants have violated Section 1 of Article XV of the California Constitution, California's usury law, by the acts and practices set forth in this Complaint.

138.    The transactions at issue are loans or forbearances within the meaning of Section 1 of Article XV of the Constitution.

139.    The interest charged by Bill Me Later is unlawful because it exceeds the statutory maximum of ten percent for any loan or forbearance of any money, goods, or things in action, where the money, goods, or things in action are for use primarily for personal, family, or household purposes within the meaning of Section 1 of Article XV of the Constitution, subdivision (1).

- 36 -

140.    The said loans and interest thereon are absolutely repayable to Bill Me Later.

141.    Defendants have a willful intent to enter into a usurious transaction in that the conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which it receives.

WHEREFORE, Plaintiff prays for judgment and relief as set forth below.

### FOURTH CAUSE OF ACTION FOR VIOLATIONS OF THE CALIFORNIA CONSTITUTION

### (AGAINST ALL DEFENDANTS)

142.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted against all Defendants.

143.    Defendants have violated Section 1 of Article XV of the California Constitution, California's Usury law.

144.    The transactions at issue are loans or forbearances within the meaning of Section 1 of Article XV of the Constitution.

145.    The interest charged by Bill Me Later is unlawful because it exceeds the statutory maximum of ten percent for any loan or forbearance of any money, goods, or things in action, where the money, goods or things in action are for use primarily for personal, family, or household purposes within the meaning of Section 1 of Article XV of the Constitution, subdivision (1).

146.    The said loans and interest thereon are absolutely repayable to Bill Me Later.

147.    Bill Me Later has a willful intent to enter into a usurious transaction in that the conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which it receives.

WHEREFORE, Plaintiff prays for judgment and relief as set forth below.

010133-12 498336 V6

## FIFTH CAUSE OF ACTION FOR AIDING AND ABETTING

## (AGAINST EBAY)

148.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted against Defendant eBay.

149.    eBay has aided and abetted Bill Me Later in violating California's consumer protection laws and California's Constitution to the detriment of Plaintiff and the Classes.

150.    eBay has so acted with knowledge of the unlawful purpose of Bill Me Later to avoid California's consumer protection laws, thereby causing injury to consumers and competitors.

151.    eBay has acted with the intent or purpose of encouraging or facilitating the violations of California's consumer protection laws and the California Constitution.

152.    eBay has provided financial support, which aids, promotes, encourages Bill Me Later to implement and continue to unlawfully charge contractual penalties and usurious interest rates.

WHEREFORE, Plaintiff prays for judgment and relief as set forth below.

## VII.    PRAYER FOR RELIEF

Plaintiff and the Classes pray for judgment against Defendants as follows:

A.    An order by which the Court enjoins Defendants from performing or proposing to perform or aiding and abetting any acts of unfair competition in California;

B.    A restitution order requiring that Defendants restore to California borrowers all funds improperly received by Defendants;

C.    An order rescinding all loan contracts between California borrowers and any Defendant made in violation of California law;

010133-12  498336 V6

D.      An order by which the Court requires Defendants to cooperate fully to remove all adverse information related to loan contracts made in violation of California law from the credit reports of consumers harmed by Defendants' unfair practices;

E.      An order requiring the return of the principal, charges and any other recompense paid to Defendants by the Classes;

F.      Punitive damages;

G.      Costs of suit;

H.      Both pre- and post-judgment interest on any amounts awarded;

I.      Payment of reasonable attorney's fees as required under California Civil Procedure Code section 1021.5; and

J.      For such further and additional relief as the Court deems proper.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


DATED:  February 2, 2012

                        HAGENS BERMAN SOBOL SHAPIRO LLP


                        By: _Jeff D. Friedman_     by SES
                           JEFF D. FRIEDMAN (*Pro Hac Vice*)

                        Shana E. Scarlett (*Pro Hac Vice*)
                        715 Hearst Avenue, Suite 202
                        Berkeley, CA 94710
                        Telephone: (510) 725-3000
                        Facsimile:  (510) 725-3001
                        jefff@hbsslaw.com
                        shanas@hbsslaw.com

                        Steve W. Berman (*Pro Hac Vice*)
                        HAGENS BERMAN SOBOL SHAPIRO LLP
                        1918 Eighth Avenue, Suite 3300
                        Seattle, WA 98101
                        Telephone: (206) 623-7292
                        Facsimile:  (206) 623-0594
                        steve@hbsslaw.com

010133-12  498336 V6

Thomas R. Karrenberg (#3726)
Heather M. Sneddon (#9520)
ANDERSON & KARRENBERG
50 West Broadway, Suite 700
Salt Lake City, Utah  84101
Telephone:  (801) 534-1700
Facsimile:  (801) 364-7697
tkarrenberg@aklawfirm.com
hsneddon@aklawfirm.com

*Attorneys for Plaintiff*

010133-12  498336 V6

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2012, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

      /s/ Jeff D. Friedman      
JEFF D. FRIEDMAN
